FILED16 NOV '11 13:35USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

KRYSTINE RAE ALCOCK,                          Case No. 1:10-cv-6206-MA

               Plaintiff,                 OPINION AND ORDER

    v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

               Defendant.

ALAN STUART GRAF
316 Second Rd.
Summertown, TN 38483

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

BRETT E. ECKELBERG
Special Assistant United States Attorney
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98105-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Krystine Rae Alcock seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403, and Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  For the reasons that follow, this court reverses the decision of the Commissioner, and remands the case for an immediate award of benefits.

**FACTUAL AND PROCEDURAL BACKGROUND**

On October 12, 2006, plaintiff filed an application for Disability Insurance Benefits (DIB).  On Ocotber 23, 2006, plaintiff filed an application for Supplemental Security Income (SSI).  Plaintiff alleges disability beginning August 18, 2002, due to post-traumatic stress disorder (PTSD), depression, irritable bowel syndrome (IBS), anxiety, memory problems, and migraines.  The claims were initially denied on January 17, 2007, and on reconsideration on March 27, 2007.  Plaintiff filed a request for a hearing before an administrative law judge (ALJ).  An ALJ held a hearing on July 15, 2008, at which plaintiff appeared with her attorney and testified.  A vocational expert, Francene M. Geers, also appeared and testified.  On July 25, 2008, the ALJ issued an unfavorable decision.  The Appeals Council accepted additional

evidence into the record, but denied plaintiff's request for review on May 13, 2010.   The ALJ's decision therefore became the final decision of the Commissioner for purposes of review.

Plaintiff was 31 years old at the time of the hearing, has obtained a general education diploma (GED), and has attended some college courses.   Plaintiff has past relevant work as a telephone customer service representative.   Plaintiff has previously worked at an answering service, provided in home care services, and worked in a doughnut shop and pizza parlor.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.   Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920.   Each step is potentially dispositive.   The claimant bears the burden of proof at steps one through four.   See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).   At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy.   Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through March 31, 2005.   A claimant seeking DIB benefits under Title II must establish

disability on or prior to the last date insured.    42 U.S.C. §
416(I)(3); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ found that plaintiff has not engaged in
substantial gainful activity since her alleged onset of disability.
See 20 C.F.R. §§ 404.1520(b), 404.1571 et seq., 416.920(b), 416.971
et seq.

At step two, the ALJ found that plaintiff had the following
severe impairments:    PTSD, depression, irritable bowel syndrome,
and migraines.    See 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the ALJ found that plaintiff's impairments, or
combination of impairments did not meet or medically equal a listed
impairment.    See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526,
416.920(d), 416.925, 416.926.

The ALJ assessed plaintiff with a residual functional capacity
(RFC) to lift ten pounds frequently and 20 pounds occasionally;
that she can sit, stand, or walk up to six hours in an eight hour
day; that she requires bathroom access; she has nonexertional
limits which include no detailed instructions; she is limited to
only occasional interaction with the general public or coworkers;
and that there should be no service jobs or work requiring
teamwork.    See 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929.

At step four, the ALJ found plaintiff unable to perform any
past relevant work.    See 20 C.F.R. §§ 404.1565, 416.965.

At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that the claimant can perform.  See 20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), 416.966.  Accordingly, the ALJ concluded that Plaintiff is not disabled under the meaning of the Act.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the Appeals Council failed to properly consider the evidence submitted after the ALJ's decision; (2) the ALJ improperly assessed plaintiff's credibility; (3) the ALJ's RFC fails to account for all of plaintiff's limitations; and (4) the ALJ improperly relied on the VE's testimony.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Andrews, 53 F.3d at 1039.  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.; Valentine, 574 F.3d at 690.  The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision

must be upheld, even if the evidence is susceptible to more than
one rational interpretation. Batson v. Comm'r of Soc. Security
Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Andrews, 53 F.3d at
1039-40.  If the evidence supports the Commissioner's conclusion,
the Commissioner must be affirmed; "the court may not substitute
its judgment for that of the Commissioner." Edlund v. Massanari,
253 F.3d 1152, 1156 (9th Cir. 2001); Batson, 359 F.3d at 1193.

## DISCUSSION

### I.    Evidence Before the Appeals Council.

Plaintiff submitted additional medical evidence to the Appeals
Council following the ALJ's adverse decision.  The Appeals Council
considered the evidence, but determined that the evidence did not
provide a basis for changing the Commissioner's decision.
Plaintiff contends that this court may consider the evidence as
part of the record.

The Commissioner argues that the Appeals Council's decision is
not subject to judicial review, and that the additional evidence
was outside the relevant time frame, and thus should be considered
as part of a new application.  I disagree.

As recently explained by the Ninth Circuit, where the Appeals
Council has considered additional materials not before the ALJ,
this court may consider the evidence submitted to the Appeals
Council to determine whether, "in light of the record as a whole,
the ALJ's decision was supported by substantial evidence." Taylor

v. Comm'r Soc. Security Admin., ___ F.3d ___; 2011 WL 5084856, *2 (9th Cir. Oct. 27, 2011).  See also Lingenfelter v. Astrue, 504 F.3d 1028, 1030 n.2 (9th Cir. 2007); Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Ramirez v. Shalala, 8 F.3d 1449, 1451-52 (9th Cir. 1993).  I will discuss the specific pieces of evidence submitted to the Appeals Council as they pertain to plaintiff's remaining arguments.

II.  **Plaintiff's Credibility**.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis.  20 C.F.R. §§ 404.1529, 416.929.  The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).  At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms.  Carmickle v. Comm'r Soc. Security Admin., 533 F.3d 1155, 1166 (9th Cir. 2008); Lingenfelter, 504 F.3d at 1036.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.  Tommasetti, 533

F.3d at 1039;  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958 (9th Cir.
2002);  <u>Orteza v. Shalala</u>, 50 F.3d 748, 750 (9th Cir. 1995).
Factors the ALJ may consider when making such credibility
determinations include the objective medical evidence, the
claimant's treatment history, the claimant's daily activities,
inconsistencies in testimony, effectiveness or adverse side effects
of any pain medication, and relevant character evidence.
<u>Tommasetti</u>, 533 F.3d at 1039.

At the July 15, 2008 hearing, plaintiff testified that she
lives in a house with her 13 year old son.  She stated that she
does all the cooking and cleaning, but that she can only perform
chores for 30 to 60 minutes, then she needs to lay down and rest
due to pain in her back.  Plaintiff testified that she does all the
grocery shopping, but her son carries the groceries into the house.
Plaintiff complained of fatigue, and feeling like she wanted to
sleep all the time.

At the hearing, plaintiff testified that she suffers from
migraines on a weekly basis, with light sensitivity, blurred
vision, and dizziness, and that the migraines can last from three
to five days.  Plaintiff testified that the medications prescribed
for her migraines exacerbate her stomach and intestinal issues.
Plaintiff stated that she had been to the emergency room a couple
of times for her migraines.

Plaintiff also testified that she has irritable bowel syndrome, causing her to have diarrhea up to 30 times per day. Plaintiff testified that her diarrhea can be unpredictable, and that she must wear protective pads to prevent accidents. Plaintiff reported that she has not lost any weight due to her severe diarrhea. Plaintiff stated that she takes Elavil for her depression, and formerly took Celexa, and sporadically has undergone counseling. Plaintiff also reported that she is easily agitated and angered, has difficulty trusting others, and has contemplated suicide. Plaintiff stated that she stopped working at the call center in 2002 due to stress, vomiting, gall bladder surgery, and stomach issues.

In the July 25, 2008 decision, the ALJ concluded that plaintiff has medically determinable impairments that could reasonably be expected to produce some symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely credible.

In this case, the ALJ's reasons for discrediting plaintiff do not reach the clear and convincing standard. The ALJ discredited plaintiff because her IBS diagnosis was not supported by objective findings, specifically finding her IBS "diagnosis is one of excuses."

As plaintiff correctly indicates, the ALJ appears to fundamentally misunderstand IBS--an IBS diagnosis typically is made

after other causes for the intestinal condition are ruled out.  The record in this case demonstrates that plaintiff's treating physician Oded Z. Shulsinger, M.D., ultimately settled on a diagnosis of IBS after multiple tests proved negative.  A review of Dr. Shulisinger's records indicates that he suspected IBS, but referred plaintiff for a colonoscopy and upper and lower endoscopies to rule out other causes.  To be sure, Daniel L. Phillips, M.D., the physician who performed the endoscopies, concurred in an IBS diagnosis when the results of his testing were negative.  I conclude it was error for the ALJ to discredit plaintiff because the objective tests used to diagnose her IBS did not indicate a bowel disorder or colonic infection.

The ALJ also erred in discrediting plaintiff because she did not lose weight despite alleging severe diarrhea.  I reject the Commissioner's suggestion that the ALJ could logically infer that plaintiff should have lost weight due to her severe diarrhea and discredit her on that basis.  As Dr. Phillips indicated, plaintiff denied losing weight, and an absence of weight loss is consistent with an IBS diagnosis.  (Tr. 194.); <u>See also</u> National Digestive Diseases Information Clearinghouse (NDDIC), found at http://digestive.niddk.nih.gov/ddiseases/pubs/ibs (a service of the Institute of Diabetes & Digestive & Kidney Diseases (NIDDK), National Institutes of Health)(last visited November 16, 2011)(describing IBS symptoms).

The ALJ also errroneously discredited plaintiff based on the fact that her treatment records after 2005 did not focus on her IBS symptoms. This conclusion is not supported by substantial evidence in the record. As noted above, plaintiff was referred to Dr. Phillips in 2006, and his treatment notes reflect that at that time, plaintiff was complaining of loose bowel movements between 20 and 30 times per day.

Furthermore, plaintiff submitted additional medical records to the Appeals Council demonstrating that between January and May of 2009, plaintiff still was reporting to her treating physicians 10 to 30 bowel movements per day. (Tr. 410-12.) In light of this additional evidence, it is clear that the ALJ's conclusion that plaintiff stopped complaining of IBS after 2005 is not supported by substantial evidence. See Lingenfelter, 504 F.3d at 1036. Accordingly, it was error for the ALJ to discount plaintiff's credibility on that basis.

The ALJ also discredited plaintiff because she did not regularly complained of migraines to her doctor. A review of the medical record fails to support the ALJ's decision on this point. Based on my careful review of the record, it appears that plaintiff reported only occasional migraines to her physicians between 2002 and 2006. (See Tr. 179, 169, 165.) However, beginning in May of 2007, plaintiff complained of chronic migraines, as evidenced by Dr. Shulsinger's referral of plaintiff to Oregon Coast Neurology.

(Tr. 307.)    On June 19, 2007, plaintiff was evaluated by Anton Lotman, M.D., who ordered further testing and prescribed Topomax and other medications.    (Tr. 288-89.)    The results of the testing were consistent with persons reporting migraines.    (Tr. 322.)

On August 2, 2007, plaintiff complained to Dr. Lotman of severe migraines occurring 15 days out of the month.    (Tr. 287.) Dr. Lotman increased her Topomax, and urged plaintiff to try physical therapy and relaxation techniques.    (Id.)    Plaintiff appears to have had some improvement, because she does not seek treatment again for migraines until April 23, 2008.    In a visit with Dr. Lotman on May 20, 2008, plaintiff reported that she had improvement with Topomax, but complained of daily headaches.    (Tr. 355.)    In July of 2008, plaintiff complained to her physical therapist that she experienced migraines which could last for five days.

Indeed, plaintiff continued to seek treatment from Dr. Lotman after the July 2008 hearing.    On February 4, 2009, plaintiff again complained to Dr. Lotman of frequent migraines, and he prescribed new medications.    On June 10, 2009, plaintiff reported that her migraines were subsiding with the prednisone she takes for her abdominal issues.

Based on this careful review of the evidence, the ALJ's conclusion that plaintiff did not consistently complain of migraines is not supported by substantial evidence.    Although

plaintiff's migraines did not appear to become chronic until 2007, from that point forward, plaintiff sought treatment from her treating physician and was referred to a specialist for her migraines.   Accordingly, the ALJ's credibility finding cannot be sustained.   Robbins, 466 F.3d at 884-85.

The ALJ also discredited plaintiff based on her back pain, finding that plaintiff did not complain of back pain until 2008, and that her back pain is not supported by objective findings.   An ALJ may not discredit a claimant based solely on the lack of objective evidence.   Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).   Because the other bases upon which the ALJ relied to discredit claimant are not supported by substantial evidence, I conclude the ALJ's credibility determination on this basis is error.   Batson, 359 F.3d at 1197.

The ALJ also discredited plaintiff because she engaged in an "active lifestyle."   I agree with the Commissioner that activities of daily living that are inconsistent with alleged symptoms are a relevant credibility consideration.   See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).   See Berry v. Astrue, 622 F.3d 1228, 1235 (9th Cir. 2010)(inconsistencies between self-reported symptoms and activities supported adverse credibility finding).

But here, the ALJ did not identify particular inconsistencies. As discussed above, plaintiff noted that she gets her son off to school, then needs to rest.   Plaintiff described that she is able

to complete household chores, but must rest every 30 to 60 minutes. Moreover, plaintiff's description of her day to day activities to Dr. Kirkendall, whose evaluation the ALJ assigned great weight, is consistent with her hearing testimony. (Compare Tr. at 210 with Tr. at 29.) Although plaintiff noted that she takes care of six dogs, plaintiff consistently indicated that her son and boyfriend assisted with that task. I find that plaintiff's description is not an "active lifestyle" as determined by the ALJ. Therefore I find that the ALJ should not have discredited plaintiff based on this basis.

In summary, I conclude that the ALJ's credibility finding is not supported by substantial evidence, and therefore, is in error. Robbins, 466 F.3d at 884-85.

## III. **RFC Assessment.**

A claimant's RFC is the most a claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ must reach the RFC assessment based on all the relevant evidence in the case record including medical records and the effects of symptoms that are reasonably attributed to a medially determinable impairment. Robbins, 466 F.3d at 883.

Plaintiff submits that the evidence concerning her mental health indicates that she has greater limitations than accounted for by the ALJ in the RFC. Plaintiff asserts that Allan R. Kirkendall, Ph.D., opined that plaintiff works at a slower pace

than the average worker, and that this limitation was required to
be incorporated into plaintiff's RFC.

Dr. Kirkendall conducted a psychological evaluation of
plaintiff on December 26, 2006. Dr. Kirkendall diagnosed plaintiff
as suffering from PTSD, and observed that she:

> works at a slower pace than most people, it appears that
> she is a persistent individual who gets all the chores
> done that are necessary to maintain her home. She did
> not appear to have any problems sustaining concentration
> and attention in today's interview. She is capable of
> engaging in appropriate social interactions though she
> describes herself as a loner. Lastly, [plaintiff]
> appears to have adequate adaptive skills at this time.
> (Tr. 211.)

The ALJ assigned great weight to Dr. Kirkendall's assessment,
and translated the doctor's opinion into the following finding:
"that [plaintiff] is able to sustain regular work activity, but
that she should not work in an environment requiring detailed
instruction or jobs requiring teamwork or perform service oriented
jobs." The ALJ also found that Dr. Kirkendall's observations about
plaintiff's ability to concentrate and her adaptive functioning are
consistent with the medical record. (Tr. 19.)

Reviewing Dr. Kirkendall's report in its entirety, I conclude
that the ALJ should have discussed whether plaintiff works at
slower pace. Dr. Kirkendall's statement was echoed by a reviewing,
consulting psychologist Dorothy Anderson, Ph.D., who stated that
"[plaintiff] did look fairly good in terms of simple MSE with
Kirkendall, but did have limited insight, slower pace and reported

feeling angry, anxious, and mistrustful." (Tr. 285.)    However,
other evaluations conducted by reviewing agency doctors concerning
plaintiff's mental limitations did not describe plaintiff has
having any limitations concerning pace.    (Tr. 223 & 279.)    To
reject the opinion of an examining physician where that opinion has
been contradicted, the ALJ must provide  specific, legitimate
reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).
Despite the apparent contradiction between Drs. Kirkendall,
Anderson, and the agency doctors concerning pace, the ALJ did not
discuss the reviewing agency doctors' evaluations, or offer the
ALJ's own interpretation of that evidence. Tommasetti, 533 F.3d at
1041; Carmickle, 533 F.3d at 1164.    I conclude that the ALJ did not
properly resolve this conflicting medical evidence, and therefore,
the limitation that plaintiff worked at a slower pace should have
been included in the RFC.

Plaintiff also contends that the evidence submitted to the
Appeals Council shows that she suffers additional functional
limitations than those described in the ALJ's RFC.    For example,
plaintiff submitted records from Penny Palmer, M.D., who performed
a psychiatric evaluation on November 4, 2009.    At that time, Dr.
Palmer diagnosed plaintiff with depressive disorder and PTSD, and
assigned a GAF of 45. (Tr. 477.)    Dr. Palmer reported that
plaintiff stated she has a chronically low mood, is easily angered

and wants to hurt people, and suffers anxiety and panic when in the presence of men. (Id.)

In the RFC, the ALJ found that plaintiff was limited to no detailed instructions, only occasional interaction with the general public or coworkers, and there should be no service jobs or work requiring teamwork. I find that the non-exertional limitations described by the ALJ in the RFC does not adequately reflect the limitations described by Dr. Palmer, specifically that plaintiff is easily angered and suffers anxiety and panic when working with men. Because the RFC does not account for these additional limitations, the RFC assessment is erroneous.[1]

## IV.    **Step Five**.

In step five, the Commissioner must show that the claimant can do other work that exists in the national economy. Andrews, 53 F.3d at 1043. The Commissioner can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets out all of the claimant's limitations that are supported by substantial evidence. Tackett, 180 F.3d at 1101.

In this case, the ALJ failed to provide clear and convincing reasons for discrediting the plaintiff's testimony about her IBS

---

[1]Plaintiff also complains that the ALJ failed to specifically account for the GAF scores ranging from 55 to 45 and spanning from December 2006 to December 2010. Because I have concluded that plaintiff's RFC fails to accurately reflect all of plaintiff's limitations, and that plaintiff is entitled to an immediate award of benefits, I decline to address this argument.

and migraine symptoms, and thus such symptoms were erroneously excluded from the plaintiff's RFC. Lingenfelter, 504 F.3d at 1040. The ALJ also failed to include all of plaintiff's mental health limitations in the RFC, rendering the RFC defective. Harman, 211 F.3d at 1178. It follows that substantial evidence does not support the ALJ's step five determination, since it was based on the erroneous RFC. Robbins, 466 F.3d at 886; Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001).

## IV.  Credit As True.

After finding the ALJ erred, this court has the discretion to remand for further proceedings or for immediate payment of benefits. Harman, 211 F.3d at 1178. The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." Id. The Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Id.

Where it is not clear that the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion whether to credit the evidence.  Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).

As discussed above, the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's testimony concerning the severity and intensity of her IBS and migraines.  At the hearing, there was testimony from Vocational Expert Francine Geers, that if an employee had to be excused from her work station 15 to 30 times per day to use the bathroom, she could not sustain competitive employment.  (Tr. 40-41.)  The VE also testified that absences due to migraines in excess of one day per month would prevent competitive employment. (Tr. 40.)

When plaintiff's testimony is fully credited, it is abundantly clear that plaintiff is disabled within the meaning of the Act. See Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Plaintiff complained to her treating physician in July 21, 2004, of persistent diarrhea with six bowel movements a day, and occasionally up to 20 times a day.  (Tr. 171.)  In November of 2004, plaintiff continued to complain of five to six bowel movements a day, and occasionally up to 10 times a day.  In December of 2004, plaintiff saw Steven Randall Giss, M.D., for a colonoscopy.  Dr. Giss's treatment notes reflect that plaintiff reported worsening diarrhea, up to eight to 10 times per day.  (Tr.

168.) In January of 2005, Dr. Shulsinger diagnosed plaintiff with IBS, by exclusion, due to her normal colonoscopy results, and in June of 2006, plaintiff experienced a recurrence of diarrhea without warning, causing abdominal pain and nausea. (Tr. 165.)

On June 26, 2006, plaintiff reported to Dr. Phillips she was experiencing diarrhea 20 times per day. Several months later, plaintiff again reported diarrhea 30 times per day. (Tr. 194.) On at least two occasions in 2007, plaintiff complained of chronic diarrhea. (Tr. 251, 309.) At the July 2008 hearing, plaintiff testified that she was experiencing diarrhea 30 times per day. On January 27, 2009, plaintiff's new treating physician Basil Pittenger, M.D., noted that plaintiff reported experiencing diarrhea 30 times per day. (Tr. 411.) On May 28, 2009, plaintiff reported 10 bowel movements per day. (Tr. 417.) It is obvious that when plaintiff's testimony is fully credited, the frequency of her diarrhea prevents her from sustaining competitive employment.

Additionally, plaintiff has complained of chronic, severe migraines. Plaintiff testified at the July 2008 hearing that she experiences migraines on a weekly basis and that they can sometimes last from three to five days. Plaintiff testified that medications have not been helpful, and that when she has a migraine she must lay down in a dark room with her eyes closed. As noted in greater detail above, beginning in May of 2007, plaintiff consistently sought treatment for her frequent, severe migraines. When

plaintiff's testimony is credited, she reports migraine headaches which would cause her to miss work in excess of one day per month.

In short, plaintiff has consistently reported experiencing severe, persistent, and sometimes unpredictable diarrhea and severe migraine headaches which prevent her from sustaining competitive employment.  Because there are no outstanding issues that must be resolved and it is clear from the record that plaintiff is entitled to disability benefits, I reverse the ALJ's decision and remand for an immediate payment of benefits.  <u>Benecke</u>, 379 F.3d at 596.

Because I have remanded for an immediate award of benefits, I do not address plaintiff's remaining issues.

<strong><u>CONCLUSION</u></strong>

Based on the foregoing, the Commissioner's decision is REVERSED, and this case is REMANDED for an immediate calculation and award of benefits.

IT IS SO ORDERED.

DATED this <u>16</u> day of NOVEMBER, 2011.

_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge